**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**GARY L.**

                           **Plaintiff,**                    **21-CV-01268-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                           **Defendant.**

—————————————————————

**DECISION AND ORDER**

        As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #11.

**BACKGROUND**

        On June 3, 2019, plaintiff Gary J. Lemke, at the age of 51, protectively

applied for Title II Social Security Disability Benefits with the Social Security

Administration ("SSA"). Dkt. #4, p. 101.[1] Plaintiff alleged he was disabled due to lumbar

disc disease, chronic diarrhea, sleep apnea, both knee osteoarthritis, patella femoral

syndrome, radiculopathy of both legs, deviated septum, urinary incontinence, moderate

depression, and maculopathy, with an onset date of March 2, 2019. Dkt. #4, p. 102-03.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

The SSA denied plaintiff's claims initially on September 16, 2019, and on reconsideration on November 26, 2019. Dkt. #4, pp. 166-172, 175-185.

On August 21, 2020, plaintiff appeared with counsel at an administrative hearing by telephone before Administrative Law Judge ("ALJ") Paul Georger. Dkt. #4, pp. 47-72.  Plaintiff testified that he was 5' 7" tall and weighed 250 pounds. Dkt. #4, p. 53. He has an associate degree and is able to read, write, and do a little bit of math. Dkt. #4, p. 54.

Plaintiff further testified that he had not worked since March 2, 2019, and he suffers from back problems, bilateral knee pain, irritable bowel syndrome, and radiculopathy. Dkt. #4, p. 55. The back pain, knee pain, and radiculopathy are "constant." Dkt. #4, p. 55.

Plaintiff estimated that he can sit for up to an hour at a time; stand for thirty minutes; walk about half a block; and lift 10-15 pounds. Dkt. #4, p. 56. He had received physical therapy and chiropractic treatment; had been prescribed a TENS unit; and had been referred to a pain management specialist. Dkt. #4, p. 56. Plaintiff also testified that he took prescribed pain medications and that he had spine surgery in 2010. Dkt. #4, pp. 56-57. He also had a spinal fusion scheduled in the upcoming week. Dkt. #4, p. 57.

Plaintiff testified that he uses a cane in and outside the home, and whenever he needs to stand for an extended period. Dkt. #4, pp. 57-58. He also uses a mobility

scooter and knee braces. Dkt. #4, p. 58. He uses the scooter when he needs to walk more than 15 or 20 minutes. Dkt. #4, pp. 61-62.

Plaintiff also testified that he has been diagnosed with sleep apnea, uses a CPAP machine, and receives mental health treatment through the VA. Dkt. #4, p. 58. The VA doctor was not currently prescribing plaintiff any medications. Dkt. #4, p. 58.

As to his memory, plaintiff testified that he forgets "simple stuff, once in a while," and he has trouble maintaining concentration and attention. Dkt. #4, p. 59. He denied having trouble understanding written or oral instructions or making decisions. Dkt. #4, p. 59. He testified that he sometimes has trouble relating to other people and prefers not to be in crowds. Dkt. #4, p. 59.

Regarding his daily activities, plaintiff testified that he watches television and uses a home computer and smartphone to play games and access the internet. Dkt. #4, p. 60. He sometimes needs help from his wife putting on his socks and shoes. Dkt. #4, p. 61. He sleeps for about two hours at a time, and then wakes up from pain. Dkt. #4, p. 62. He also experiences incontinence, with a minimum of three accidents a month. Dkt. #4, pp. 62-63. Similarly, his irritable bowel syndrome, combined with his back pain, sometimes makes it difficult for him to get to the bathroom. Dkt. #4, pp. 63-64.

On September 30, 2020, the ALJ issued an unfavorable decision. Dkt. #4, pp. 139-158.  Plaintiff appealed, and on January 8, 2021, the Appeals Council remanded

the case for further administrative proceedings. Dkt. #4, pp. 159-165. Specifically, the Appeals Council stated that, on remand, the ALJ should: further consider the nature and severity of all of plaintiff's impairments; consider all relevant evidence in the record; give further consideration to plaintiff's RFC in light of the medical source opinions, obtaining additional evidence if necessary; if necessary, obtain evidence from a medical expert regarding plaintiff's functional limitations; and, if necessary, obtain supplemental evidence from a VE. Dkt. #4, pp. 162-63.

On May 28, 2021, a hearing pursuant to the remand order was held before the ALJ, and plaintiff was again represented by counsel. Dkt. #4, pp. 73-100.

Plaintiff testified that he was 53 years old, 5' 7" tall, and weighed 250 pounds. Dkt. #4, p. 79. From 2006 to 2018, he worked for the Department of Homeland Security as a detention service manager and safety manager. Dkt. #4, p. 80. He testified that he had not worked since March 2, 2019, the alleged onset date. Dkt. #4, p. 80.

Plaintiff testified that he became unable to work at his job in a prison because of physical and mental difficulties, specifically radiating pain in his back and difficulty focusing due to the pain. Dkt. #4, pp. 80-81. He testified that the pain in his back and knees was "constant;" he could sit for a half an hour to an hour; he could stand for 15-20 minutes; he could walk for 200-300 feet; and he could lift 20 pounds. Dkt. #4, pp. 81-82. He also testified that he takes pain medications and that he had recently undergone a spinal fusion. Dkt. #4, pp. 81-82.

Plaintiff testified that he had surgery on both his knees and that he uses a cane to get around. Dkt. #4, p. 83. He has a mobility scooter but "lately, I haven't used it that often. " Dkt. #4, p. 83. He has a walker but also does not use it often. Dkt. #4, p. 83.

Plaintiff testified that he was issued a CPAP machine but does not take any medications for his breathing. Dkt. #4, p. 84. He sees a psychologist at the VA for counseling but is not on any medication for mental health issues. Dkt. #4, p. 85.

As to personal care activities such as showering, plaintiff testified that "occasionally" it takes him longer and he asks his wife to help him if he is "having a really bad day." Dkt. #4, p. 85. He does some cooking, such as using a crock pot; he does not do laundry; he occasionally cleans around the house; and he goes shopping with his wife. Dkt. #4, pp. 85-86.

Plaintiff also testified that he has hearing loss in his right ear, he uses a hearing aid, and he can hear someone speaking to him if they are facing his good ear. Dkt. #4, pp. 86-87. Plaintiff testified he also has gastrointestinal issues and occasional urinary incontinence. Dkt. #4, p. 17.

The ALJ also heard testimony from Yaakov Taitz, a vocational expert ("VE"). The ALJ asked the VE to assume a person:

> limited to light work, with occasional use of ramps and stairs;
> no use of ladders, ropes or scaffolds; occasional balancing,

> stooping, kneeling, crouching and crawling. He would be limited to hearing and understanding simple instructions only. He would be limited to simple, routine, repetitive tasks, [and] simple work-related decisions; with occasional interaction with supervisors, coworkers, and the general public; with occasional changes to the worksite and routine. He would need a sit/stand option, changing positions once every hour. He also needs a cane to ambulate.

Dkt. #4, pp. 93-94.

The ALJ then asked the VE if, given those restrictions, plaintiff could perform his past work. Dkt. #4, p. 94. The VE opined that he could not. Dkt. #4, p. 94. The ALJ then asked the VE whether—given plaintiff's age, education, past relevant work experience, and those restrictions—there were jobs in the national economy that plaintiff could perform. Dkt. #4, p. 94. The VE testified that plaintiff could perform the light work jobs of mail clerk, price marker, and routing clerk. Dkt. #4, p. 94.

The ALJ then presented the VE with a second hypothetical with additional limitations: plaintiff would be limited to sedentary, rather than light, work; no use of ramps and stairs, no balancing; no kneeling, crouching or crawling; simple, routine, repetitive tasks, not at a production rate; and, in addition to using a cane, he would need to use a scooter to ambulate longer distances. Dkt. #4, pp. 94-95.

In response, the VE testified that plaintiff could perform the sedentary jobs of addresser, document preparer, and surveillance system monitor. Dkt. #4, p. 95.

Finally, the ALJ presented a third hypothetical with additional limitations:  no stooping; no hearing in his right ear and he uses a hearing aid for that; no work-related decisions; no interaction with supervisors, co-workers, and the general public; no changes to the worksite or routine; sit/stand option, at will; off-task up to 20% of the workday and absent two or more days per month. Dkt. #4, p. 95.

The VE responded that there were no jobs in the national economy that plaintiff could perform under the third hypothetical. Dkt. #4, pp. 95-96.

On June 20, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #4, pp. 14-41. The Appeals Council denied plaintiff's request for review on October 20, 2021. Dkt. #4, pp. 8-13.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by

evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, on remand from the Appeals Council and after a second hearing, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 2, 2019; (2) plaintiff has the severe impairments of depression; degenerative disc disease of the lumbar and thoracic spine, status post laminectomy; osteoarthritis and degenerative joint disease of both knees; chondrocostal junction syndrome; right-sided hearing loss; and obesity; plaintiff also has the non-severe impairments of chronic kidney disease, irritable bowel syndrome, heliobactor pylori resulting in gastritis, sleep apnea, and a deviated septum;  (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work[2] except with occasional use of ramps and stairs; no use of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; he would be limited to hearing and understanding simple instructions only; he is limited to simple, routine, repetitive tasks, simple work-related decisions, and occasional interaction with supervisors, coworkers, and the general public, with occasional[ ] changes to the worksite and routine; he would need a sit/stand option, changing positions once every hour, and he needs a cane to ambulate; (5) plaintiff is unable to perform his past relevant work of being a manager of health and safety in a government setting or a chief jailer; and (6) plaintiff is capable of

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b).

working as a mail clerk, price marker, and routing clerk, and is not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp. 12-24.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2))*.*

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1))*.* Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)).

Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### Challenge to the ALJ's Decision

Plaintiff's sole challenge to the ALJ's decision is that, in formulating plaintiff's RFC, the ALJ improperly rejected medical opinion evidence and used his own lay judgment to interpret raw medical data. Dkt. #6-1, pp. 16-26.

### The ALJ's Formulation of Plaintiff's RFC

In formulating the RFC, the ALJ first reviewed plaintiff's own disability and function reports from 2019, in which plaintiff described his physical and mental impairments and how they impacted his abilities. Dkt. #4, pp. 24-25. The ALJ found that plaintiff's impairments could reasonably be expected to cause the alleged symptoms. However, after reviewing plaintiff's medical records, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence in the record for the reasons explained in this decision." Dkt. # 4, p. 25.

Specifically, as to plaintiff's back problems, the ALJ reviewed plaintiff's records from treatment providers from 2017 to 2021, as well as a consultative medical examination conducted on July 22, 2019. Dkt. #4, pp. 25. The ALJ noted that those records consistently showed that, while plaintiff reported varying levels of pain and used a cane to ambulate, physical exams consistently showed that he had little to no strength deficits in his lower extremities. Dkt. #4, pp. 25-26.

The ALJ thus concluded that: "The evidence is consistent with the alleged need of a cane to ambulate, but the lack of any significant weakness or any sensory deficits on examinations are inconsistent with the alleged degree of limitations." Dkt. #4, p. 26. Nonetheless, the ALJ imposed a limitation arguably stricter than what these medical records indicated, stating: "[T]he evidence supports a limitation to light work with postural limitations with a sit/stand option, and it also supports a need for a cane to ambulate." Dkt. #4, p. 26.

The ALJ then found that the medical records supported a right-side hearing loss, but that treatment had been limited to plaintiff's use of a hearing aid, and plaintiff had had no problem hearing the consultative medical examiner who examined him in July 2019. Dkt. #4, p. 26. The ALJ concluded: "At most, this evidence warrants a limitation to hearing and understanding simple instruction only." Dkt. #4, p. 26.

As to plaintiff's obesity, the ALJ found that a "limitation to a light exertional level with postural limitations appropriately addresses the claimant's obesity." Dkt. #4, p. 26.

Turning to plaintiff's mental health, the ALJ noted that the medical records showed that plaintiff's symptoms had been documented as mild; during examinations, his thought processes were coherent; he was able to conduct normal personal care activities; and a depression screening in July 2020 was negative. Dkt. #4, p. 27. The ALJ concluded that this "evidence is not consistent with the alleged difficulties with concentration, memory, or interacting with others." Dkt. #4, p. 27. However, again arguably erring on the conservative side, the ALJ noted: "Nonetheless, some modest mental limitations have been placed in the residual functional capacity above." Dkt. #4, p. 27.

## **The ALJ's Assessment of Medical Opinions of Record**

With this background in mind, the ALJ then considered the medical opinions of record. On review, plaintiff takes issue with the ALJ's assessment of the opinions of Ron Miller, P.A., Andrew Dybalski, PA-C, Dr. Kavitha Dheenadayalu, Dr. Susan Santarpia, and Dr. Raquel Benchoam-Ravid. Dkt. #6-1, pp. 16-21.

The Court will discuss the ALJ's assessment of each of these five opinions, and it will then address plaintiff's arguments as to how those assessments were flawed.

**Ron Miller, P.A.**

Ron Miller, P.A. provided a "Physical Treating Medical Source Statement" dated May 15, 2020, in which he opined that plaintiff had severe functional limitations due to his chronic back pain. Dkt. #5, pp. 415-419. These included being incapable of even low stress jobs; the ability to walk only one city block; the ability to sit for 2-30 minutes before needing to stand up; the ability to stand for 15 minutes at a time; the ability to sit for no more than 2 hours in a work day and stand or walk less than two hours; the need to walk around every 5-10 minutes; the need to shift at will from sitting, standing, or walking; the need to use a cane; the ability to occasionally carry up to 10 pounds, rarely 20 pounds, and never 50 pounds; the inability to twist, stop, crouch/squat, or climb ladders and only rarely climb stairs; and he estimated that plaintiff would be absent from work more than 4 days a month. Dkt. #5, pp. 415-419.

The ALJ found these opinions "*not well supported*" because the only "clinical findings and objective signs" Miller cited in support of these strict limitations were that plaintiff was "uncomfortable with positional changes-uses cane to assist ambulation-guarded when moving and changing positions." Dkt. #4, p. 28; Dkt. #5, p. 415. Miller cited no objective or clinical measurements of plaintiff's strength, range of motion, or functioning.

The ALJ also found that Miller's proposed restrictions were "*inconsistent*" with the objective medical evidence which consistently documented plaintiff's intact strength and sensation in his lower extremities. Dkt. #4, p. 28. In addition, Miller's

treatment statement predated plaintiff's lumbar fusion surgery in August 2020. Dkt. #4, p. 29. The ALJ thus found Miller's opinion "unpersuasive." Dkt. #4, p. 29.

### Andrew Dybalski, PA-C

Plaintiff also argues that the ALJ improperly found "unpersuasive" the opinion of Andrew Dybalski, PA-C, who gave an opinion dated October 16, 2020, six weeks after plaintiff underwent lumbar fusion surgery. Dkt. #5, pp. 687-776.

The ALJ explained that Dybalski's opinion was "*supported*" insofar as it was based on plaintiff's status at six weeks post-surgery, but that it was not "*consistent*" with the medical evidence because Dybalski simultaneously noted that strength testing "revealed no significant functional deficits throughout the bilateral lower extremities." Dkt. #5, p. 687. The ALJ also explained that Dybalski's October 2020 opinion was "*not consistent*" with his subsequent examinations of plaintiff on January 19, 2021 and April 20, 2021, which showed only "mild findings." Dkt. #4, p. 29. Specifically, Dybalski's January 19, 2021 examination states: "Strength testing again revealed no significant functional deficits throughout the bilateral lower extremities, including resisted dorsiflexion/plantarflexion and inversion/eversion of the feet all graded as 5/5 MMS." Dkt. #5, p. 452. Dybalski's April 20, 2021 examination concluded: "There is no tenderness to palpation of the lumbar spine and paraspinal muscles. ROM of the lower extremities is intact . . . Strength is 5/5 in all muscle groups of the bilateral lower extremities." Dkt. #5, p. 776.

The ALJ thus found Dybalski's opinion "not persuasive." Dkt. #4, p. 29.

**Dr. Kavitha Dheenadayalu**

The ALJ also considered a "Residual Functional Capacity Form" dated February 25, 2020 from Dr. Kavitha Dheenadayalu, one of plaintiff's treatment providers. Dkt. #5, pp. 87-95.

The ALJ noted that Dheenadayalu opined that plaintiff could only stand for half an hour and sit for one to two hours per day due to his back pain; that he would need to lie down, although she did not answer the follow-up question as to why; that plaintiff could lift and carry less than five pounds; and he would have difficulty bending, squatting, and kneeling. Dkt. #4, p. 28. The ALJ found Dheenadayalu's opinion "*not well supported*" because she provided no objective findings, instead referring only to treatment notes attached to the form. Dkt. #4, p. 28. Further, Dheenadayalu had not examined plaintiff since December 10, 2019, and her notes of that exam reported normal strength and sensation in plaintiff's lower extremities. Dkt. #5, p. 95. The ALJ thus found Dheenadayalu's opinion "*inconsistent*" with the objective medical evidence showing that plaintiff's strength was within normal limits. Dkt. #4, p. 28. He also noted that her opinion predated plaintiff's lumbar fusion in August 2020.

The ALJ thus found Dheenadayalu's opinion "unpersuasive."

**Dr. Susan Santarpia**

As to plaintiff's mental functioning, the ALJ considered an opinion dated July 2019, from Susan Santarpia, Ph. D., a consultative medical examiner. Dkt. #4, p. 29; Dkt. #4, p. 1357.

Santarpia opined that plaintiff had "mild to moderate impairment" in using reason and judgment in making work-related decisions. Dkt. #4, p. 1359. However, she otherwise found that plaintiff reported no anxiety-related symptoms; no panic attacks; no manic or thought disorder; and no cognitive deficits. Dkt. #4, 1358. Plaintiff was well groomed; fluent in his ability to express himself; coherent in his thought processes; his attention was intact; he had average cognitive functioning; and he could do simple mathematical calculations and serial 7s. Dkt. #4, 1358-59. He displayed depressive symptomology as it related to the death of his daughter. Dkt. #4, pp. 1357, 1359.

The ALJ found Santarpia's opinion "vague" and not helpful in the vocational context. Dkt. #4, p. 29. He also found her "mild to moderate" limitation to be arguably "*supported*" to the extent that plaintiff displayed a dysthymic mood when discussing his deceased daughter. Dkt. #4, p. 29. However, he further found that degree of limitation not supported by Santarpia's assessment of plaintiff's attention and concentration as "intact," as demonstrated by plaintiff's ability to perform serial sevens. Dkt. #4, p. 29; Dkt. #4, p. 1359. The ALJ also noted that Santarpia's opinion was "*only partially consistent*" with the medical evidence in that the treating records showed only "mild" findings as to plaintiff's mood. Dkt. #4, p. 29.

The ALJ thus found Santaria's opinion "not particularly persuasive." Dkt. #4, p. 29.

### Dr. Raquel Benchoam-Ravid

The ALJ also considered the opinion of Raquel Benchoam-Ravid, M.D., a consultative medical examiner. Dkt. #4, p. 28; Dkt. #4, pp. 1362-1368.

Benchoam-Ravid's opinion, dated July 22, 2019, reviewed plaintiff's impairments, medical history, daily activities, and physical exam. Dkt. #4, pp. 1362-1365. She opined that plaintiff had moderate limitation for bending and squatting; and moderate to marked limitation for prolonged standing, walking, climbing stairs, carrying, lifting, pushing, and pulling. Dkt. #4, p. 1366. She also opined that plaintiff should avoid activities that require auditory acuity, avoid operating machinery or motor vehicles or being at unprotected heights. Dkt. #4, p. 1366.

The ALJ found that this opinion, while it lacked specificity, was "*generally supported*" by Benchoam-Ravid's examination of plaintiff, as well as "*generally consistent*" with the other medical evidence, such as MRIs and EMGs. Dkt. #4, p. 28. However, the ALJ noted that this examination, like others throughout the record, found intact strength in plaintiff's upper and lower extremities. Dkt. #4, p. 28; Dkt. #4, p. 1365.

The ALJ thus found Benchoam-Ravid's opinion "only somewhat persuasive." Dkt. #4, p. 28.

## **The ALJ Did Not Err in Assigning Weight to These Opinions**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he erred in assigning weight to the medical opinions of these five professionals.

First, plaintiff asserts that the "ALJ did not properly evaluate or explain the supportability or consistency factors required by the new regulations." Dkt. #6-1, pp. 17-19. This is incorrect. As the above discussion demonstrates—as highlighted by italicization—the ALJ discussed both supportability and consistency for each of these five opinions, referencing both the basis for the professional's own opinion as well as other evidence of record.[3]

The ALJ's formulation of plaintiff's RFC thus clearly conforms to applicable Second Circuit authority that the RFC need not perfectly correspond to any particular medical opinion and that the ALJ is to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted). Furthermore, "genuine conflicts in the medical evidence are for the Commissioner to resolve." *Voght v. Saul*, 18-CV-1435-MJR, 2020 WL 3410837, at *2 (W.D.N.Y. June 19, 2020) (citation and internal quotations omitted).

---

[3] Plaintiff implicitly concedes that the ALJ considered these factors in this somewhat quizzical statement: "As an initial matter, the ALJ did not meet this requirement. To the extent he applied these factors it was not enough." Dkt. #6-1, p. 18.

Next, plaintiff argues that the ALJ failed to evaluate the opinions of Dheenadayalu, Miller, and Benchoam-Ravid for their consistency in recommending that plaintiff use a cane and was limited for standing, walking, climbing, and carrying. Dkt. #6-1, p. 18. But the RFC that the ALJ fashioned includes such restrictions, including a sit/stand option and the use of a cane to ambulate. Dkt. #4, p. 23.

To the extent that plaintiff goes one step further and argues that these providers' opinions "arguably erode [plaintiff's] ability to perform light work," Dkt. #6-1, p. 18, it is well established that "[a]though the ALJ considers opinions from medical sources, the final responsibility for determining the RFC is reserved to the Commissioner." *Darryl H. v. Comm's of Soc. Sec.*, CASE # 1:21-cv-012029, 2023 WL 8623507, at *4 (W.D.N.Y. Dec. 13, 2023) (citations omitted).

Plaintiff's argument that the ALJ gave insufficient weight to other "clinical factors" found in plaintiff's medical records is similarly flawed. Dkt. #6-1, p. 19. Indeed, in the first step of the RFC formulation, the ALJ noted differing assessments of plaintiff's limitations, both subjective and objective, and he concluded that the records reflected a common denominator of largely intact strength and sensation in plaintiff's lower extremities. Dkt. #4, pp. 24-27. Plaintiff's disagreement with that assessment cannot overcome the deferential standard under which this Court reviews the ALJ's findings. *See Brenda D. v. Comm'r of Soc. Sec.*, 6:19-CV-6830 (WBC), 2021 WL 1856905, at *6 (W.D.N.Y. May 10, 2021) (plaintiff "may disagree with the ALJ's conclusion; however, the Court must defer to the Commissioner's resolution of conflicting evidence and reject the

ALJ's findings only if a reasonable factfinder would have to conclude otherwise") (citation and internal quotation omitted).

Next, plaintiff argues that the ALJ improperly discounted the weight he afforded to Miller's opinion because it predated the lumbar fusion plaintiff underwent in August 2020. Dkt. #6-1, p. 19. However, this argument is belied by the record, which contains treatment notes from 2021—after plaintiff's surgery—which document intact strength bilaterally in plaintiff's lower extremities. Dkt. #5, pp. 452, 776.

Plaintiff also argues that the ALJ's RFC is not supported by substantial evidence because he found no medical opinion fully "persuasive" and crafted the RFC "from his own surmise." Dkt. #6-1, pp. 22-23. However, the Second Circuit has "specifically rejected" this familiar argument and "held that an RFC may be supported by substantial evidence even if it does not correspond to any particular medical opinion." *Darryl H.*, 2023 WL 8623507, at *4 (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

Finally, plaintiff deems "especially problematic" the ALJ's conclusion that the opinions of Ron Miller, P.A. and Dr. Kavitha Dheenadayalu, plaintiff's treating providers, were unpersuasive. Dkt. #6-1, p. 21.

Under revised regulations issued by the Social Security Agency, effective on or after March 27, 2017, medical opinions from treating sources are no longer "eligible

for controlling weight." *Rachel R. v. Comm'r of Soc. Sec.*, Case # 1:21-cv-851-DB, 2023 WL 7300889, at *10 (W.D.N.Y. Nov. 6, 2023). Rather, the ALJ considers the supportability and consistency of the provider's opinion, and where that opinion is not supported by the provider's own treatment notes and is not consistent with other evidence in the record, the ALJ does not err by finding it not persuasive. *Id.* at *11.

As discussed above, the ALJ adequately explained why he found the opinions of Ron Miller, P.A. and Dr. Kavitha Dheenadayalu to be unpersuasive based on their own treatment notes and other objective medical evidence of record. Plaintiff's argument is thus without merit.

For all these reasons, the Court concludes that the ALJ's findings are supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #6) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #9) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
             December 26, 2023

 s/ H. Kenneth Schroeder, Jr.
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge